1  Deborah J. Pimentel, In Pro Per
   CA SBN 115182
2  6644 Wooster Court
   Castro Valley, CA  94552
3  510 886 8933

4

5              UNITED STATES DISTRICT COURT
            NORTHERN DISTRICT OF CALIFORNIA
6

7  DEBORAH J. PIMENTEL,              )   Case No.: C08-00249 MMC
                                     )
8                        Plaintiff,) **PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION**
                                     )   **TO DISMISS PURSUANT TO FRCP 12(b)(6),**
9            vs.                     )   **MEMORANDUM OF POINTS AND AUTHORITIES IN**
                                     )   **SUPPORT THEREOF**
10 THOMAS J. ORLOFF, NANCY O'MALLEY, )
   G. RICHARD KLEMMER, DAVID C. BUDDE, )   Date:      July 18, 2008
11 THE DISTRICT ATTORNEY'S OFFICE OF ALAMEDA )   Time:      9:00 a.m.
   COUNTY, THE COUNTY OF ALAMEDA, DOES 1 - 10, )   Courtroom: 7
12                                   )   Judge:     The Honorable Maxine M. Chesney
                           Defendants.)
13 _____)

14

15        TO:  DEFENDANTS AND THEIR ATTORNEYS OF RECORD HEREIN:

16 PLAINTIFF HEREBY RESPONDS to Defendants' Motion to Dismiss as follows:

17

18                        I.    INTRODUCTION

19

20        Plaintiff's Complaint, filed on January 14, 2008, alleges employment discrimination, intentional

21 discrimination, wrongful termination, failure to make accommodations and hostile work environment based on

22 Plaintiff's disability.  (Complaint, 2:14-20). Plaintiff's Complaint is brought pursuant to § 504 of the Rehabilitation Act

23 of 1973, as amended by the Rehabilitation Act Amendments of 1991 and 1992 and §s 1981a(a)(2) and 1983 of the

24 Civil Rights Act of 1964.  (Complaint, 2:8-10). Defendants claim in their Motion to Dismiss that Plaintiff's Complaint is

25 time-barred for failure to comply with and exhaust certain administrative remedies and by applicable statutes of

26 limitation; they thereby move to dismiss pursuant to  FRCP 12(b)(6).  (Mot.To Dism, 5:11-13).

27

28

Pimentel v. Orloff, et al., Case No. C08-00249 MMC
Plaintiff's Response to Defendants' Motion to Dismiss
Page 1 of 14

## II.  FACTUAL AND PROCEDURAL BACKGROUND

Between 1985 and 2004 Plaintiff was employed by the County of Alameda as a Deputy District Attorney in the District Attorney's Office.  Plaintiff was diagnosed with fibromyalgia, a severely painful and debilitating disease, on or about October 6, 1992. Plaintiff immediately advised her supervisor, Sandra Quist, of this fact. Contrary to Defendants' characterization of the family tragedy Plaintiff suffered in 2002, it was not an accident, rather Plaintiff's then-15-year-old daughter was the victim of a vicious, serious felony, which crime occurred over a two-week period. Also despite Defendants' characterization of Plaintiff's sick leave during 2002 and 2003, the times Plaintiff called in sick were due to Plaintiff's own illness, not that of her family.  Defendants know this because Defendants required Plaintiff to obtain a doctor's excuse each time she was ill.

Based on Plaintiff's use of approved sick leave and leave without pay, Defendants initiated a sick leave policy concomitant with advising Plaintiff that she was in violation thereof.  Other policies and practices were instituted which applied only to Plaintiff.  It is unknown which, if any, of these policies and practices were a result of personnel decisions or individual harassment and humiliation of Plaintiff on the part of the Defendants.

Plaintiff advised Defendants that their actions caused even more stress for Plaintiff and resulted in her illness being further exacerbated.

Additionally, Plaintiff's request for accommodation was met with cursory and perfunctory denials.

Plaintiff's employment was terminated on February 5, 2004, for violation of the District Attorney's Office sick leave policy.

§ 504 of the Rehabilitation Act of 1973 has always provided for direct filing by a private citizen and does not require any administrative action or "right to sue letter."

Plaintiff filed the instant action on Monday, January 14, 2008.

/ / / / /

/ / / / /

/ / / / /

/ / / / /

/ / / / /

Pimentel v. Orloff, et al., Case No. C08-00249 MMC
Plaintiff's Response to Defendants' Motion to Dismiss
Page 2 of 14

### III.  ARGUMENT

**A.  PLAINTIFF'S COMPLAINT IS SUFFICIENT TO WITHSTAND
DISMISSAL UNDER FRCP 12(b)(6) BECAUSE IT CONTAINS
A PLAIN STATEMENT OF FACTS SUFFICIENT TO SHOW
THAT PLAINTIFF IS ENTITLED TO THE RELIEF SOUGHT**

In *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002), the United States Supreme Court determined the pleading standards appropriate for complaints alleging employment discrimination. Presented with "the question whether a complaint in an employment discrimination lawsuit must contain specific facts establishing a prima facie case of discrimination under the framework set forth by this Court in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)," the Court held "that an employment discrimination complaint need not include such facts and instead must contain only `a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Id.* at 508, 122 S.Ct. 992, *quoting* Fed.R.Civ.P. 8(a)(2).

When considering a motion to dismiss under Fed.R.Civ.P. 12(b)(6), the Court must view a plaintiff's allegations in the light most favorable to the plaintiff.., *Fusco v. Xerox Corp* 676 F.2d 332, 334 (8th Cir.1982).

In *Conley v. Gibson* (1957) 355 US 41, 47-48, a race discrimination suit, the Court was presented with the issue whether the lower court had improperly granted the respondents' Motion to Dismiss pursuant to FRCP 12(b)(6) for failure to state a claim upon which relief could be granted.

"The decisive answer to this is that the Federal Rules of Civil Procedure do not require a claimant to set out in detail the facts upon which he bases his claim. To the contrary, all the Rules require is "a short and plain statement of the claim" that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests. The illustrative forms appended to the Rules plainly demonstrate this. Such simplified "notice pleading" is made possible by the liberal opportunity for discovery and the other pretrial procedures established by the Rules to disclose more precisely the basis of both claim and defense and to define more narrowly the disputed facts and issues. Following the simple guide of Rule 8 (f) that "all pleadings shall be so construed as to do substantial justice," we have no doubt that petitioners' complaint adequately set forth a claim and gave the respondents fair notice of its basis. The Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits.

Federal Rule of Civil Procedure 8 states in pertinent part:

(a) CLAIM FOR RELIEF. A pleading that states a claim for relief must contain:

Pimentel v. Orloff, et al., Case No. C08-00249 MMC
Plaintiff's Response to Defendants' Motion to Dismiss
Page 3 of 14

(1) a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support;
(2) a short and plain statement of the claim showing that the pleader is entitled to relief; and
(3) a demand for the relief sought, which may include relief in the alternative or different types of relief.
. . . .
(e) CONSTRUING PLEADINGS. Pleadings must be construed so as to do justice.

In reviewing the long-established pleading standard in *Conley v. Gibson*, 355 U.S. 41 (1957), the US Supreme Court recently held in *Bell Atlantic v. Twombly* __ US __ (2007) that "it is no longer enough to allege bare elements of a cause of action; instead 'a complaint must allege facts suggestive of [the proscribed] conduct.' The Supreme Court's language is instructive: "Because the plaintiffs here have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." The Court observed that the Twombly case was a prospective class action antitrust case and implied that such litigation is prone to abuse given the extraordinary expense involved in discovery in such cases. Consequently, the Court stated that "[o]n certain subjects understood to raise a high risk of abusive litigation, a plaintiff must state factual allegations with greater particularity than Rule 8 requires." The Court did not expound on the list of "certain subjects understood to raise a high risk of abusive litigation," however it is arguable given the holding in *Swierkiewicz* and the *Twombly* Court's reference to *Swierkiewicz* that the *Twombly* Court did not intend to include employment claims based in Constitutional law.   The *Twombly* Court rephrased the Conley standard as:  once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint.

The defendants cite *Nietzke v. Williams* (1989) 490 US 319, 327, (*per curium*) in arguing that the Rule 12(b)(6) standard requires dismissal in the instant case.  *Neitzke* is inapposite as the Court's finding was based on **28 USC §1915(d)—not Rule 12(b)(6)**.  *Nietzke* involved a complaint filed *in forma pauperis* by an inmate arguing under 42 U.S.C. §1983 that prison officials had violated his Eighth Amendment rights by denying him medical treatment and his Fourteenth Amendment due process rights by transferring him without a hearing to a less desirable cellhouse when he refused to continue working because of his medical condition.  The District Court dismissed plaintiff's claims *sua sponte* **pursuant to 28 USC §1915(d) as frivolous** because they failed to state a claim under Rule 12(b)(6).  The Supreme Court affirmed the Court of Appeals' reversal of the dismissal of the Eighth Amendment claim as to two of the five defendants, declaring itself unable to state with certainty that Williams was unable to make

Pimentel v. Orloff, et al., Case No. C08-00249 MMC
Plaintiff's Response to Defendants' Motion to Dismiss
Page 4 of 14

any rational argument to support his claim.  The Court affirmed dismissal of the plaintiff's 14th Amendment claim on

the ground that a prisoner clearly has no constitutionally protected liberty or property interest in being incarcerated in

a particular institution or wing and found that a complaint is not automatically frivolous within the meaning of §1915(d)

because it fails to state a claim under Rule 12(b)(6). To this end, [§1915] accords judges not only the authority to

dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the

complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless. "Examples of

the former class are claims against which it is clear that the defendants are immune from suit," *see, e.g., Navarro v.*

*Block* (9th Cir. 2001) 250 F.3d 729 cited by defendants (Mot. To Dism. 6:27-7:1) "and claims of infringement of a legal

interest which clearly does not exist," (*Neitzke* at 327-328) *see e.g., Associated General Contractors of California,*

*Inc. v. California State council of Carpenters* (1983)459 US 519, 526, cited by defendants (Mot. To Dism. 6:24-27)

(where in a complex *Sherman* and *Clayton Acts* Antitrust suit, it was concluded that the Union was not a person

injured by reason of a violation of the antitrust laws within the meaning of the Clayton Act.) and *Reddy v. Linton*

*Industries* (9th Cir. 1990) 912 F.2d 291, 293 (*cert denied*) 502 US 921 (1991) cited by defendants (Mot. To Dism. 7:3-

5) (where plaintiff was determined to lack standing to bring his wrongful termination suit under *RICO.*)

Similarly, Defendants reliance on Newman is misplaced.  In Newman, the coroner filed a Rule 12(b)(6)

motion to dismiss, arguing that the plaintiff parents could not have a property interest in their deceased children's

corneas. The coroner also argued that to the extent the parents did have due process rights, they were required to

exhaust state postdeprivation remedies prior to bringing suit. The District Court granted the motion to dismiss prior to

a scheduled hearing and without a written opinion explaining the basis for the dismissal. The plaintiffs appealed.  The

Court of Appeal reversed and remanded, relying on *Conley, ibid.*, 45-46, stating the issue before them as whether it

appears beyond doubt that the plaintiffs can prove no set of facts in support of [their] claim which would entitle them

to relief."

Defendants cite *Wyatt v. Terhune* (9th Cir. 2003) 315 F.3d 1108 for the proposition that Plaintiff's complaint

must be dismissed for failure to exhaust administrative remedies.  They are in error.  The plaintiff in *Wyatt* was a

Rastafarian inmate who brought First and 14th Amendment claims against the wardens of the prison challenging the

male grooming regulations at the prison that would have required him to cut his hair contrary to his religious beliefs

and conceded that he had not followed the administrative remedies required under the Prison Litigation Reform Act

Pimentel v. Orloff, et al., Case No. C08-00249 MMC
Plaintiff's Response to Defendants' Motion to Dismiss
Page 5 of 14

1  (hereafter PLRA).  The Court reversed and remanded, finding that failure to exhaust the administrative remedies

2  under the PLRA was not jurisdictional in nature and therefore a defense to be raised and proved by the defendants.

3  The Court likened the administrative requirements to statutes of limitation and stated, "Compliance with the applicable

4  statutes of limitations is not a pleading requirement under Rule 8, and dismissal on such grounds generally is

5  improper. *Id.,* 1117-1118.

6       The Defendants also rely on *Jablon v. Dean Witter & Co.,* (9th cir. 1990) (sic)614 F.2d 677, 682 to justify a

7  dismissal where the "facts and dates alleged in the complaint indicate the claim is barred by the statute of limitations,

8  a motion to dismiss for failure to state a claim lies." (Mot. To Dism . 7:8-10).

9       What Defendants fail to recognize is that the facts alleged in Plaintiff's complaint specifically state that this §

10  504 claim does not require exhaustion of administrative remedies nor a "right to sue letter." "Indeed, a statute of

11  limitations defense does not justify dismissal of a claim 'unless it appears beyond doubt that the plaintiff can prove no

12  set of facts that would establish the timeliness of the claim.'" *Hernandez v. City of El Monte*, 138 F.3d 393, 402 (9th

13  Cir. 1998) (citation omitted).

14       Plaintiff's employment claims comply with FRCP 8 in that the complaint contains a short and plain statement

15  of the claim that will give the defendants fair notice of what the plaintiff's claim is, the grounds upon which it rests, that

16  plaintiff is entitled to relief and that there are no jurisdictional administrative exhaustion requirements.  Rule 8(f)

17  provides that all pleadings shall be so construed as to do substantial justice.

18       On these grounds, and based on the following, Defendants' 12(b)(6) motion should be denied.

19

20     **B.  § 504 DOES NOT REQUIRE EXHAUSTION OF**
       **ADMINISTRATIVE REMEDIES NOR A "RIGHT TO SUE"**

21     **LETTER**

22

23       Defendants take the position that Plaintiff's claims under [§ 504 of] the Rehabilitation Act are barred because

24  she failed to exhaust administrative remedies (Mot. To Dism. 8:22-23.)   Defendants then argue without any legal

25  support whatsoever that § 504 incorporates Title VII's requirement that a complainant first file a charge with the Equal

26  Employment Opportunities Commission ("EEOC") and receive a "Right to Sue" letter before a civil action may be

27  filed. (Mot. To Dism. 8:3-6). (Emphasis original.)  Defendants' reliance on *Gonzales v. Stanford Applied Engineering,*

28

Pimentel v. Orloff, et al., Case No. C08-00249 MMC
Plaintiff's Response to Defendants' Motion to Dismiss
Page 6 of 14

*Inc.* (9th Cir, 1979) 597 F.2d 1298, 1299, in support of their motion to dismiss for failure to exhaust administrative

remedies is misplaced. *Gonzales* was in fact a Title VII case and therefore is inapposite here.

Defendants cite *Woodman v. Runyon* (1997 10th Cir.), 132 F.3d 1330, 1341 as authority that exhaustion of

administrative remedies is a jurisdictional prerequisite to instituting a Title Vii action in federal court and that the

Rehabilitation Act encompasses this exhaustion requirement. *Woodman* is inapposite here. As shown *infra.*, § 504

has no exhaustion requirement where the defendant is not the federal government, including the US Postal Service.

*Woodman* was an action brought against the United States Postal Service under Title VII and § 504. The relevant

issue here was whether the plaintiff was required to comply with administrative remedies before bringing suit. The

Court found that the plaintiff had complied with administrative requirements and cooperated with the EEOC, however,

the Rehabilitation Act had been amended during the course of proceedings in October 1992 to re-define the meaning

of "accommodation". Because the Court found this crucial to plaintiff's claim, the matter was reversed and

remanded.

§ 504 of the Rehabilitation Act, 29 U.S.C. 794, prohibits "any *program or activity* receiving *federal financial*

*assistance*" from subjecting any "otherwise qualified individual with a disability" to discrimination. The term "program

or activity" is broadly defined. See 29 U.S.C. 794(b). § 504's prohibition encompasses, but is not limited to,

employment discrimination by such programs. See *Consolidated Rail Corp.* v. *Darrone*, 465 U.S. 624 (1984). Each

agency awarding federal financial assistance has promulgated regulations to implement § 504. (citation omitted).

"[A]ny person aggrieved by any act or failure to act by any recipient of Federal assistance" can utilize the

"procedures" and "remedies" available under Title VI of the Civil Rights Act of 1964, 29 U.S.C. 794a(a)(2), **which**

**includes an implied private right of action against the program.** See *Roberts* v. *Progressive Independence, Inc.*,

183 F.3d 1215, 1222 n.6 (10th Cir. 1999); *Pushkin* v. *Regents of the Univ. of Colo.*, 658 F.2d 1372, 1380 (10th Cir.

1981). (Emphasis added). Title VI remedies. . .are available to plaintiffs who prevail in a § 504 action against "any

recipient of Federal assistance or Federal provider of such assistance under § 794 of this title." 29 U.S.C.

§794a(a)(2). Those same remedies are **not** available to plaintiffs who prevail in § 504 actions **against a federal**

**defendant**, including Executive agencies and the U.S. Postal Service. *See Morgan v. United States Postal Service*,

798 F.2d 1162 at 1165. (Emphasis added). [see also **U.S. DOJ,** Civil Rights Division, Disability Rights §, *A Guide to*

Pimentel v. Orloff, et al., Case No. C08-00249 MMC
Plaintiff's Response to Defendants' Motion to Dismiss
Page 7 of 14

*Disability Rights* (Sept. 2005) "§ 504 may also be enforced through private lawsuits. It is not necessary to file a complaint with a Federal agency or to receive a 'right-to-sue' letter before going to court."]

    **C.**  **42 USC §§ 1983 AND 1981a PROVIDE FOR INDIVIDUAL AND OFFICIAL LIABILITY ON THE PART OF EACH DEFENDANT AND PROVIDE ADDITIONAL REMEDIES TO PLAINTIFF FOR UNAUTHORIZED AND INTENTIONAL VIOLATIONS OF PLAINTIFF'S CONSTITUTIONAL RIGHTS**

    **i.**  **42 USC § 1983**

    "Our analysis of the legislative history of the Civil Rights Act of 1871 compels the conclusion that Congress *did* intend municipalities and other local government units to be included among those persons to whom §1983 applies. Local governing bodies, therefore, can be sued directly under §1983 for monetary, declaratory, or injunctive relief where the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers. Moreover, although the touchstone of the §1983 action against a government body is an allegation that official policy is responsible for a deprivation of rights protected by the Constitution, local governments, by the very terms of the statute, may be sued for constitutional deprivations visited pursuant to governmental custom even though such a custom has not received formal approval through the body's official decisionmaking channels." (*Monell v. New York City Dept. of Social Services* (1978) 436 US 658).

    Finally, it appears beyond doubt from the legislative history of the Civil Rights Act of 1871 that *Monroe [v. Pape (1961) 365 US 167]* misapprehended the meaning of the Act. Were 1983 unconstitutional as to local governments, it would have been equally unconstitutional as to state or local, officers yet the 1871 Congress clearly intended 1983 to apply to such officers and all agreed that such officers could constitutionally be subjected to liability under 1983. The Act also unquestionably was intended to provide a remedy, to be broadly construed, against all forms of official violation of federally protected rights. Therefore, without a clear statement in the legislative history, which is not present, there is no justification for excluding municipalities from the "persons" covered by 1983. (Id., at 660).

    Defendants are inaccurate in their analysis that §1983 actions against individuals in their official capacities are not sustainable against the individual. Where a defendant acts outside his authority or intentionally and with malice, personal liability may attach.

Pimentel v. Orloff, et al., Case No. C08-00249 MMC
Plaintiff's Response to Defendants' Motion to Dismiss
Page 8 of 14

Government officials may be sued in their *individual* capacity.  Such a suit does not represent a suit against the government entity for which he is associated. *Kentucky v. Graham*, 473 U.S. 159, 165 (1985).

Personal capacity suits. . . seek to impose individual or personal liability upon a governmental officer for actions taken under color of state law. To establish personal liability in a § 1983 action, it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right. While the plaintiff in a personal capacity lawsuit need not establish a connection to governmental policy or custom, officials sued in their personal capacities, unlike those sued in their official capacities, may assert personal immunity defenses such as objectively reasonable reliance on existing law. State or local officers sued in their personal capacity come to court as individuals. A government official in the role of personal capacity defendant thus fits within the statutory term of person in § 1983.

Absolute immunity will not shield him if he "has intertwined his exercise of prosecutorial discretion with other, unauthorized conduct." *Bernard v. County of Suffolk*, 356 F.3d 495, 504. A prosecutor also does not have absolute immunity "for acts that are manifestly or palpably beyond his authority" or are "performed in the clear absence of all jurisdiction." *Schloss v. Bouse*, 876 F.2d 287, 291 (2d Cir. 1989). To determine whether a prosecutor has authority to take some act, "a court will begin by considering whether relevant statutes authorize prosecution for the charged conduct." *Bernard v. County of Suffolk*, 356 F.3d 495 (2d Cir. 2004) (holding that prosecutor engaging in an allegedly politically-motivated prosecution was nonetheless entitled to absolute immunity, since the decision to file charges was a prosecutorial function). "For example, where a prosecutor has linked his authorized discretion ... to an unauthorized demand for a bribe, sexual favors, or the defendant's performance of a religious act, absolute immunity will be denied." *Id.* at 504 (citing *Doe v. Phillips*, 81 F.3d 1204 (2d Cir. 1996). The most prominent (and perhaps one of the only published Second Circuit opinions applying the impermissibly intertwined doctrine) is *Doe v. Phillips*, 81 F.3d 1204 (2d Cir. 1996) In *Doe*, a state prosecutor, Gerald D'Amelia filed felony charges against a mother for allegedly molesting her 14-year old son. *Id.* at 1206. After beginning to doubt the boy's accusations, the prosecutor agreed to dismiss the charges. But only on one condition. Doe, a Roman Catholic, was required to swear on the Bible that the son's accusations were false. *Id.* At 1207 ("D'Amelia testified that he told counsel that [unless Doe swore on the Bible] criminal charges would not be dismissed against her [ ].") The panel held that even though accepting and demand a plea bargain is an advocative function, *Taylor v. Kavanagh*, 640 F.2d 450 (2d Cir. 1981), the prosecutor

Pimentel v. Orloff, et al., Case No. C08-00249 MMC
Plaintiff's Response to Defendants' Motion to Dismiss
Page 9 of 14

was not absolutely immune since he lacked authority to demand that Doe swear on the Bible. Because he lacked

authority to demand this "intertwined conduct," D'Amelia was not absolutely immune from suit. *Id.* at 1211.

("D'Amelia's conduct was not protected by absolute immunity because his demand that Doe swear to her innocence

on a bible in church was manifestly beyond his authority.")

Section 1983 does not impose a state of mind requirement independent of the underlying basis for

liability, *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled in part, Daniels v. Williams*, 474 U.S. 327 (1986)  but there

must be a causal connection between the defendant's actions and the harm that results. *Mt. Healthy City School Dist.*

*Bd. of* Educ. v. Doyle, 429 U.S. 274, 285-87 (1977). In order to hold a local government liable under section 1983, the

Supreme Court has interpreted this causation element to require that the harm be the result of action on the part of

the government entity that implemented or executed a policy statement, ordinance, regulation, or decision officially

adopted and promulgated by that body's officers, or the result of the entity's custom. Monell, supra., 690-691.

Further, the entity's policy or custom must have been the "moving force" behind the alleged deprivation. An

unconstitutional policy may also exist if an isolated action of a government employee is dictated by a "final

policymaker". Pembaur v. City of Cincinnati, 475 U.S. 469 (1986); Bryan County v. Brown, 520 U.S. 397 (1997).  Who

is a "final policymaker" is decided by reference to state law.  Pembaur, at 483; McMillan v. Monroe County, 520 U.S.

781 (1997).

However, a supervisor can only be liable in his individual capacity if he directly participates in causing the

harm--relying upon respondeat superior is insufficient. Greason v. Kemp, 891 F.2d 829, 836 (11th Cir. 1990); Brown

v. Crawford, 906 F.2d 667, 671 (11th Cir. 1990); Zatler v. Wainewright, 802 F.2d 397, 401 (11th Cir. 1986).

Section 1983 is not itself a source of substantive rights, it merely provides a method for the vindication of rights

elsewhere conferred in the United States Constitution and Laws. *Chapman v. Houston Welfare Rights Org.,* 441 U.S.

600, 617 (1979); *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979). to state a claim for a deprivation of Due Process,

a plaintiff must show: (1) that he possessed a constitutionally protected property interest; and (2) that he was

deprived of that interest without due process of law. *Cleveland Board of Education v. Loudermill*, 470 U.S. 532

(1985); *Baker v. McCollan*, 443 U.S. 137, 145 (1979).  Due process property interests are created by "existing rules

or understandings that stem from an independent source such as state law--rules or understanding that secure

certain benefits and that support claims of entitlement to those benefits."  To have a property interest protected by the

Pimentel v. Orloff, et al., Case No. C08-00249 MMC
Plaintiff's Response to Defendants' Motion to Dismiss
Page 10 of 14

Due Process Clause, "a person must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." The determination of whether due process was accorded is decided by reference to the Constitution. *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 541 (1985). Due process requires that "a deprivation of life, liberty, or property be preceded by notice and opportunity for hearing appropriate to the nature of the case," *Loudermill,* 470 U.S. at 542.

In addition to protection against deprivations of procedural due process, the Due Process Clause has two substantive components--the substantive due process simpliciter, and incorporated substantive due process. In order to state a claim for a violation of the substantive due process simpliciter, the plaintiff must demonstrate that the defendant engaged in conduct that was "arbitrary, or conscience shocking, in a constitutional sense." *Collins v. City of Harker Heights, Texas,* 503 U.S. 115, 128 (1992); *Rymer v. Douglas County,* 764 F.2d 796, 801 (11th Cir. 1985). With respect to incorporated substantive due process, the plaintiff may state a claim by proving a violation of one of the Bill of Rights. The Supreme Court has held that one of the substantive elements of the Due Process Clause protects those rights that are fundamental--rights that are implicit in the concept of ordered liberty, and has, over time, held that virtually all of the Bill of Rights protect such fundamental rights and has likewise held that they apply to the states through the "liberty" interest of the Due Process Clause. *Palko v. Connecticut,* 302 U.S. 319, 325 (1937).

      ii.    **42 USC §1981**

42 USC 1981a provides: **Damages in cases of intentional discrimination in employment**
     **(a) Right of recovery**
      . . . .
      **(2) Disability**
      In an action brought by a complaining party under the powers, remedies, and procedures set forth in § 706 or 717 of the Civil Rights Act of 1964 42 U.S.C. 2000e-5, 2000e-16 (as provided in § 107(a) of the Americans with Disabilities Act of 1990 (42U.S.C. 12117(a)), and § 794a(a)(1)of title 29, respectively) against a respondent who engaged in unlawful intentional discrimination (not an employment practice that is unlawful because of its disparate impact) under § 791 of title 29 and the regulations implementing § 791 of title 29 or who violated the requirements of § 791 of title 29 or the regulations implementing § 791 of title 29 concerning the provision of a reasonable accommodation, or § 102 of the Americans with Disabilities Act of 1990 (42 U.S.C. 12112), or committed a violation of § 102(b)(5) of the Act, against an individual, the complaining party may recover compensatory and punitive damages as allowed in sub§ (b) of this §, in addition to any relief authorized by § 706(g) of the Civil Rights Act of 1964, from the respondent.
      **(3) Reasonable accommodation and good faith effort**
      In cases where a discriminatory practice involves the provision of a reasonable accommodation pursuant to § 102(b)(5) of the Americans with Disabilities Act of

Pimentel v. Orloff, et al., Case No. C08-00249 MMC
Plaintiff's Response to Defendants' Motion to Dismiss
Page 11 of 14

1990 [42 U.S.C 12112(b)(5)] or regulations implementing § 791of title 29, damages may not be awarded under this § where the covered entity demonstrates good faith efforts, in consultation with the person with the disability who has informed the covered entity that accommodation is needed, to identify and make a reasonable accommodation that would provide such individual with an equally effective opportunity and would not cause an undue hardship on the operation of the business.

**(b) Compensatory and punitive damages**
**(1) Determination of punitive damages**
A complaining party may recover punitive damages under this § against a respondent (other than a government, government agency or political subdivision) if the complaining party demonstrates that the respondent engaged in a discriminatory practice or discriminatory practices with malice or with reckless indifference to the federally protected rights of an aggrieved individual.

In the instant case Defendants conducted themselves and caused others to act outside their advocative function, and even outside their individual authority, resulting in a deprivation of Plaintiff's constitutional rights. Sick leave and other policies were implemented that pertained only to the Plaintiff, the Plaintiff was stalked while at work by a co-worker at the behest of at least one of the defendants and DA Investigators and Deputy Sheriff's were dispatched to illegally enter and storm Plaintiff's home while she slept, all in violation of Plaintiff's 4th and 14th amendments of the US Constitution, 42 USC §§1981a and 1983 and § 504 of the Rehabilitation Act of 1973. The full nature and extent of these acts and the motivation behind them cannot be known until discovery procedures have been instituted and are fully under way. Therefore, the defendants and each of them are sued both in their official and individual capacities. Any immunity defense that exists is properly pled and proven as a defense and not as a basis for dismissal.

**D.   DEFENDANTS' ARGUMENTS RELATIVE TO TITLE VII ARE INAPPLICABLE HEREIN BECAUSE PLAINTIFF'S CLAIMS DO NOT SOUND IN TITLE VII OF THE AMERICANS WITH DISABILITIES ACT**

Plaintiff has not cited nor claimed any cause of action under Title VII and therefore defendants' arguments in support of dismissal of substantive claims that rely on the Americans with Disabilities Act are inapposite.

/ / / / /

/ / / / /

/ / / / /

/ / / / /

/ / / / /

Pimentel v. Orloff, et al., Case No. C08-00249 MMC
Plaintiff's Response to Defendants' Motion to Dismiss
Page 12 of 14

**E. THE "CATCHALL" FOUR-YEAR STATUTE OF LIMITATIONS CONTAINED IN 28 U.S.C. §1658 GOVERNS PLAINTIFF'S CIVIL ACTION AS IT AROSE UNDER FEDERAL STATUTES ENACTED AFTER DECEMBER 1, 1990**

In 2004 the United States Supreme Court issued the long-awaited, seminal decision in *Jones v. R.R. Donnelley & Sons* 549 US 369 (2004) establishing that the four-year catchall statute of limitations contained in 28 USC §1658 governs all civil actions arising under federal statutes enacted after December 1, 1990, thereby negating the need to "borrow" state statutes of limitation and clear up the mass of confusion that resulted therefrom. The Court specified that a cause of action "aris[es] under an Act of Congress enacted" after December 1, 1990--and therefore is governed by §1658's 4-year statute of limitations--if the plaintiff's claim against the defendant was made possible by a post-1990 enactment.

The 1992 amendments to the Rehabilitation Act, incorporating Title VII standards as they relate to employment and providing for additional damages available for claims brought under the Rehabilitation Act and §1981a defines those claims as arising under an Act of Congress enacted after December 1, 1990. [see 29 USC 791(g) and 794(d)].

The Civil Rights Act of 1991 amended the Civil Rights Act of 1866 to include discrimination on the basis of disability, giving rise to Plaintiff's post-1990 claim under *Jones, supra.*

Therefore the applicable statute of limitations is that contained in 28 USC §1658 pursuant to the ruling in *Jones v. R.R. Donnelly, supra.*

## IV.  CONCLUSION

An employment discrimination complaint need not include a *prima facie* showing and instead must contain only a short and plain statement of the claim showing that the pleader is entitled to relief.  When considering a motion to dismiss under Fed.R.Civ.P. 12(b)(6), the Court must view a plaintiff's allegations in the light most favorable to the plaintiff.  Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint.

Any person aggrieved by any act or failure to act by any recipient of Federal assistance can utilize the "procedures" and "remedies" available under Title VI of the Civil Rights Act of 1964, 29 U.S.C. 794a(a)(2), which includes an implied private right of action against the program.  Title VI remedies are available to plaintiffs who prevail

Pimentel v. Orloff, et al., Case No. C08-00249 MMC
Plaintiff's Response to Defendants' Motion to Dismiss
Page 13 of 14

in a § 504 action against any recipient of Federal assistance or Federal provider of such assistance under § 794 of this title.

The defendants are properly named individually and in their official capacity.  A government official in the role of personal capacity defendant fits within the statutory term of person in §1983.  Absolute immunity will not shield him if he "has intertwined his exercise of prosecutorial discretion with other, unauthorized conduct.

The four-year catchall statute of limitations contained in 28 USC §1658 governs all civil actions arising under federal statutes enacted after December 1, 1990.  A cause of action arises under an Act of Congress enacted after December 1, 1990--and therefore is governed by §1658's 4-year statute of limitations--if the plaintiff's claim against the defendant was made possible by a post-1990 enactment.  The 1992 amendments to the Rehabilitation Act, incorporating Title VII standards as they relate to employment and providing for additional damages available for claims brought under the Rehabilitation Act and §1981a defines those claims as arising under an Act of Congress enacted after December 1, 1990.

For the foregoing reasons, defendants' Motion to Dismiss should be denied.

Dated this 16th day of July, 2008

Deborah J. Pimentel, Plaintiff
In Propria Persona

Pimentel v. Orloff, et al., Case No. C08-00249 MMC
Plaintiff's Response to Defendants' Motion to Dismiss
Page 14 of 14

# TABLE OF CONTENTS

Page

I.      INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   1

II.     FACTUAL AND PROCEDURAL BACKGROUND. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   2

III.    ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ..   3

        A.  PLAINTIFF'S COMPLAINT IS SUFFICIENT TO WITHSTAND
            DISMISSAL UNDER FRCP 12(b)(6) BECAUSE IT CONTAINS
            A PLAIN STATEMENT OF FACTS SUFFICIENT TO SHOW
            THAT PLAINTIFF IS ENTITLED TO THE RELIEF SOUGHT. . . . . . . . . . . . .   3

        B.  § 504 DOES NOT REQUIRE EXHAUSTION OF ADMINISTRATIVE
            REMEDIES NOR A RIGHT TO SUE LETTER . . . . . . . . . . . . . . . . . . . . . . ..  . . .   6


        C.  42 USC §§ 1983 AND 1981a PROVIDE FOR INDIVIDUAL AND
            OFFICIAL LIABILITY ON THE PART OF EACH DEFENDANT
            AND PROVIDE ADDITIONAL REMEDIES TO PLAINTIFF FOR
            UNAUTHORIZED AND INTENTIONAL VIOLATIONS OF
            PLAINTIFF'S CONSTITUTIONAL  RIGHTS. . . . . . . . . . . . . . . . . . . . . . . . . .   8

            i.    42 USC § 1983. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   8

            ii.   42 USC §1981. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  11

        D.  DEFENDANTS' ARGUMENTS RELATIVE TO TITLE VII ARE
            INAPPLICABLE HEREIN BECAUSE PLAINTIFF'S CLAIMS DO
            NOT SOUND IN TITLE VII OF THE AMERICANS WITH
            DISABILITIES ACT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  12


        E.  THE "CATCHALL" FOUR-YEAR STATUTE OF LIMITATIONS
            CONTAINED IN 28 U.S.C. §1658 GOVERNS PLAINTIFF'S CIVIL
            ACTION AS IT AROSE UNDER FEDERAL STATUTES ENACTED
            AFTER DECEMBER 1, 1990. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  13

    V.  CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  13

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

TABLE OF AUTHORITIES

Cases                                                                                          Page

(1983)459 US 519, 526                                                                          5

(*Monell v. New York City Dept. of Social Services* (1978) 436 US 658).                        8, 10

. *Cleveland Board of Education v. Loudermill*, 470 U.S. 532 (1985)                            10, 11

. *Palko v. Connecticut,* 302 U.S. 319, 325 (1937)                                            11

*Associated General Contractors of California, Inc. v. California State council of Carpenters*

 *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979                                             10

 *Baker v. McCollan*, 443 U.S. 137, 145 (1979)                                                11

*Bell Atlantic v. Twombly __ US __ (2007)*                                                     4

*Bernard v. County of Suffolk*, 356 F.3d 495, 504                                             9

Brown v. Crawford, 906 F.2d 667, 671 (11th Cir. 1990)                                          10

 Bryan County v. Brown, 520 U.S. 397 (1997)                                                    10

*Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 617 (1979)                            10

*Collins v. City of Harker Heights, Texas,* 503 U.S. 115, 128 (1992)                          11

*Conley v. Gibson* (1957) 355 US 41, 47-48                                                     3, 4

*Consolidated Rail Corp.* v. *Darrone*, 465 U.S. 624 (1984)                                   7

 *Doe v. Phillips*, 81 F.3d 1204 (2d Cir. 1996).                                              9

*Fusco v. Xerox Corp* 676 F.2d 332, 334 (8th Cir.1982).                                       3

*Gonzales v. Stanford Applied Engineering, Inc.* (9th Cir, 1979) 597 F.2d 1298, 1299       6-7

Greason v. Kemp, 891 F.2d 829, 836 (11th Cir. 1990)                                            10

*Hernandez v. City of El Monte*, 138 F.3d 393, 402 (9th Cir. 1998)                            6

*Jablon v. Dean Witter & Co.,* (9th cir. 1990) (sic)614 F.2d 677, 682                       6

*Jones v. R.R. Donnelley & Sons* 549 US 369 (2004)                                            13

*Kentucky v. Graham*, 473 U.S. 159, 165 (1985).                                              8

*McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)        3

 McMillan v. Monroe County, 520 U.S. 781 (1997)                                               10

*Monroe [v. Pape (1961) 365 US 167]*                                                         *8*

1    *Mt. Healthy City School Dist. Bd. of* Educ. v. Doyle, 429 U.S. 274, 285-87 (1977    10

2    *Navarro v. Block* (9th Cir. 2001) 250 F.3d 729    5

3    *Nietzke v. Williams* (1989) 490 US 319, 327    4

4    Parratt v. Taylor, 451 U.S. 527 (1981), overruled in part,    10

5    Pembaur v. City of Cincinnati, 475 U.S. 469 (1986)    10

6    *Pushkin* v. *Regents of the Univ. of Colo.*, 658 F.2d 1372, 1380 (10th Cir. 1981)    7

7    *Reddy v. Linton Industries* (9th Cir. 1990) 912 F.2d 291, 293 (*cert denied*) 502 US 921 (1991)    5

8    *Rymer v. Douglas County*, 764 F.2d 796, 801 (11th Cir. 1985)    11

9    *Schloss v. Bouse*, 876 F.2d 287, 291 (2d Cir. 1989    9

10    *See Morgan v. United States Postal Service*, 798 F.2d 1162 at 1165    7

11    *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002),    3, 4

12    *Taylor v. Kavanagh*, 640 F.2d 450 (2d Cir. 1981)    9

13    *Woodman v. Runyon* (1997 10th Cir.), 132 F.3d 1330, 1341    7

14    *Wyatt v. Terhune* (9th Cir. 2003) 315 F.3d 1108    5

15    Zatler v. Wainewright, 802 F.2d 397, 401 (11th Cir. 1986)    10

16    Statutory Authorities

17    Federal Rule of Civil Procedure    8

18    § 504 of] the Rehabilitation Act    serim

19    42 USC § 1983    8

20    Civil Rights Act of 1871    8

21    42 USC §1981    11

22    4th and 14th Amendments of the US Constitution    12

23    TITLE VII OF THE AMERICANS WITH DISABILITIES ACT    12

24

25    Articles

26    **U.S. DOJ,** Civil Rights Division, Disability Rights §, *A Guide to Disability Rights* (Sept. 2005)    7

27

28

1 | Deborah J. Pimentel, In Pro Per
CA SBN 115182
2 | 6644 Wooster Court
Castro Valley, CA 94552
3 | 510 886 8933

4

5

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

6

7 | DEBORAH J. PIMENTEL,                          )   Case No.: C08-00249 MMC
                                                 )
8 |                              Plaintiff,)       **PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION
                                                 )   TO DISMISS PURSUANT TO FRCP 12(b)(6),
9 |              vs.                              )   MEMORANDUM OF POINTS AND AUTHORITIES IN
                                                 )   SUPPORT THEREOF**
10 | THOMAS J. ORLOFF, NANCY O'MALLEY,           )
     G. RICHARD KLEMMER, DAVID C. BUDDE,         )   Date:        July 18, 2008
11 | THE DISTRICT ATTORNEY'S OFFICE OF ALAMEDA    )   Time:        9:00 a.m.
     COUNTY, THE COUNTY OF ALAMEDA, DOES 1 - 10, )   Courtroom:   7
12 |                                             )   Judge:       The Honorable Maxine M. Chesney
                                  Defendants.)
13 | _____ )

14

15 |              TO:  DEFENDANTS AND THEIR ATTORNEYS OF RECORD HEREIN:

16 | PLAINTIFF HEREBY RESPONDS to Defendants' Motion to Dismiss as follows:

17

18 |                              I.    INTRODUCTION

19

20 |          Plaintiff's Complaint, filed on January 14, 2008, alleges employment discrimination, intentional

21 | discrimination, wrongful termination, failure to make accommodations and hostile work environment based on

22 | Plaintiff's disability. (Complaint, 2:14-20). Plaintiff's Complaint is brought pursuant to § 504 of the Rehabilitation Act

23 | of 1973, as amended by the Rehabilitation Act Amendments of 1991 and 1992 and §s 1981a(a)(2) and 1983 of the

24 | Civil Rights Act of 1964. (Complaint, 2:8-10). Defendants claim in their Motion to Dismiss that Plaintiff's Complaint is

25 | time-barred for failure to comply with and exhaust certain administrative remedies and by applicable statutes of

26 | limitation; they thereby move to dismiss pursuant to FRCP 12(b)(6). (Mot.To Dism, 5:11-13).

27

28

Pimentel v. Orloff, et al., Case No. C08-00249 MMC
Plaintiff's Response to Defendants' Motion to Dismiss
Page 1 of 14

## II.  FACTUAL AND PROCEDURAL BACKGROUND

Between 1985 and 2004 Plaintiff was employed by the County of Alameda as a Deputy District Attorney in the District Attorney's Office.  Plaintiff was diagnosed with fibromyalgia, a severely painful and debilitating disease, on or about October 6, 1992. Plaintiff immediately advised her supervisor, Sandra Quist, of this fact. Contrary to Defendants' characterization of the family tragedy Plaintiff suffered in 2002, it was not an accident, rather Plaintiff's then-15-year-old daughter was the victim of a vicious, serious felony, which crime occurred over a two-week period. Also despite Defendants' characterization of Plaintiff's sick leave during 2002 and 2003, the times Plaintiff called in sick were due to Plaintiff's own illness, not that of her family.  Defendants know this because Defendants required Plaintiff to obtain a doctor's excuse each time she was ill.

Based on Plaintiff's use of approved sick leave and leave without pay, Defendants initiated a sick leave policy concomitant with advising Plaintiff that she was in violation thereof.  Other policies and practices were instituted which applied only to Plaintiff.  It is unknown which, if any, of these policies and practices were a result of personnel decisions or individual harassment and humiliation of Plaintiff on the part of the Defendants.

Plaintiff advised Defendants that their actions caused even more stress for Plaintiff and resulted in her illness being further exacerbated.

Additionally, Plaintiff's request for accommodation was met with cursory and perfunctory denials.

Plaintiff's employment was terminated on February 5, 2004, for violation of the District Attorney's Office sick leave policy.

§ 504 of the Rehabilitation Act of 1973 has always provided for direct filing by a private citizen and does not require any administrative action or "right to sue letter."

Plaintiff filed the instant action on Monday, January 14, 2008.

/////

/////

/////

/////

/////

Pimentel v. Orloff, et al., Case No. C08-00249 MMC
Plaintiff's Response to Defendants' Motion to Dismiss
Page 2 of 14

### III.  ARGUMENT

### A.  PLAINTIFF'S COMPLAINT IS SUFFICIENT TO WITHSTAND DISMISSAL UNDER FRCP 12(b)(6) BECAUSE IT CONTAINS A PLAIN STATEMENT OF FACTS SUFFICIENT TO SHOW THAT PLAINTIFF IS ENTITLED TO THE RELIEF SOUGHT

In *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002), the United States Supreme Court determined the pleading standards appropriate for complaints alleging employment discrimination. Presented with "the question whether a complaint in an employment discrimination lawsuit must contain specific facts establishing a prima facie case of discrimination under the framework set forth by this Court in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)," the Court held "that an employment discrimination complaint need not include such facts and instead must contain only `a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Id.* at 508, 122 S.Ct. 992, *quoting* Fed.R.Civ.P. 8(a)(2).

When considering a motion to dismiss under Fed.R.Civ.P. 12(b)(6), the Court must view a plaintiff's allegations in the light most favorable to the plaintiff.., *Fusco v. Xerox Corp* 676 F.2d 332, 334 (8th Cir.1982).

In *Conley v. Gibson* (1957) 355 US 41, 47-48, a race discrimination suit, the Court was presented with the issue whether the lower court had improperly granted the respondents' Motion to Dismiss pursuant to FRCP 12(b)(6) for failure to state a claim upon which relief could be granted.

"The decisive answer to this is that the Federal Rules of Civil Procedure do not require a claimant to set out in detail the facts upon which he bases his claim. To the contrary, all the Rules require is "a short and plain statement of the claim" that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests. The illustrative forms appended to the Rules plainly demonstrate this. Such simplified "notice pleading" is made possible by the liberal opportunity for discovery and the other pretrial procedures established by the Rules to disclose more precisely the basis of both claim and defense and to define more narrowly the disputed facts and issues. Following the simple guide of Rule 8 (f) that "all pleadings shall be so construed as to do substantial justice," we have no doubt that petitioners' complaint adequately set forth a claim and gave the respondents fair notice of its basis. The Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits.

Federal Rule of Civil Procedure 8 states in pertinent part:

(a) CLAIM FOR RELIEF. A pleading that states a claim for relief must contain:

Pimentel v. Orloff, et al., Case No. C08-00249 MMC
Plaintiff's Response to Defendants' Motion to Dismiss
Page 3 of 14

    (1) a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support;

    (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and

    (3) a demand for the relief sought, which may include relief in the alternative or different types of relief.

    . . . .

  (e) CONSTRUING PLEADINGS. Pleadings must be construed so as to do justice.

    In reviewing the long-established pleading standard in *Conley v. Gibson*, 355 U.S. 41 (1957), the US Supreme Court recently held in *Bell Atlantic v. Twombly* __ US __ (2007) that "it is no longer enough to allege bare elements of a cause of action; instead 'a complaint must allege facts suggestive of [the proscribed] conduct.' The Supreme Court's language is instructive: "Because the plaintiffs here have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." The Court observed that the Twombly case was a prospective class action antitrust case and implied that such litigation is prone to abuse given the extraordinary expense involved in discovery in such cases. Consequently, the Court stated that "[o]n certain subjects understood to raise a high risk of abusive litigation, a plaintiff must state factual allegations with greater particularity than Rule 8 requires." The Court did not expound on the list of "certain subjects understood to raise a high risk of abusive litigation," however it is arguable given the holding in *Swierkiewicz* and the *Twombly* Court's reference to *Swierkiewicz* that the *Twombly* Court did not intend to include employment claims based in Constitutional law.   The *Twombly* Court rephrased the Conley standard as:  once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint.

    The defendants cite *Nietzke v. Williams* (1989) 490 US 319, 327, (*per curium*) in arguing that the Rule 12(b)(6) standard requires dismissal in the instant case.  *Neitzke* is inapposite as the Court's finding was based on **28 USC §1915(d)—not Rule 12(b)(6)**.  *Nietzke* involved a complaint filed *in forma pauperis* by an inmate arguing under 42 U.S.C. §1983 that prison officials had violated his Eighth Amendment rights by denying him medical treatment and his Fourteenth Amendment due process rights by transferring him without a hearing to a less desirable cellhouse when he refused to continue working because of his medical condition.  The District Court dismissed plaintiff's claims *sua sponte* **pursuant to 28 USC §1915(d) as frivolous** because they failed to state a claim under Rule 12(b)(6).  The Supreme Court affirmed the Court of Appeals' reversal of the dismissal of the Eighth Amendment claim as to two of the five defendants, declaring itself unable to state with certainty that Williams was unable to make

Pimentel v. Orloff, et al., Case No. C08-00249 MMC
Plaintiff's Response to Defendants' Motion to Dismiss
Page 4 of 14

any rational argument to support his claim.  The Court affirmed dismissal of the plaintiff's 14th Amendment claim on

the ground that a prisoner clearly has no constitutionally protected liberty or property interest in being incarcerated in

a particular institution or wing and found that a complaint is not automatically frivolous within the meaning of §1915(d)

because it fails to state a claim under Rule 12(b)(6). To this end, [§1915] accords judges not only the authority to

dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the

complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless. "Examples of

the former class are claims against which it is clear that the defendants are immune from suit," *see, e.g., Navarro v.*

*Block* (9th Cir. 2001) 250 F.3d 729 cited by defendants (Mot. To Dism. 6:27-7:1) "and claims of infringement of a legal

interest which clearly does not exist," (*Neitzke* at 327-328) *see e.g., Associated General Contractors of California,*

*Inc. v. California State council of Carpenters* (1983)459 US 519, 526, cited by defendants (Mot. To Dism. 6:24-27)

(where in a complex *Sherman* and *Clayton Acts* Antitrust suit, it was concluded that the Union was not a person

injured by reason of a violation of the antitrust laws within the meaning of the Clayton Act.) and *Reddy v. Linton*

*Industries* (9th Cir. 1990) 912 F.2d 291, 293 (*cert denied*) 502 US 921 (1991) cited by defendants (Mot. To Dism. 7:3-

5) (where plaintiff was determined to lack standing to bring his wrongful termination suit under *RICO.*)

Similarly, Defendants reliance on Newman is misplaced.  In Newman, the coroner filed a Rule 12(b)(6)

motion to dismiss, arguing that the plaintiff parents could not have a property interest in their deceased children's

corneas. The coroner also argued that to the extent the parents did have due process rights, they were required to

exhaust state postdeprivation remedies prior to bringing suit. The District Court granted the motion to dismiss prior to

a scheduled hearing and without a written opinion explaining the basis for the dismissal. The plaintiffs appealed.  The

Court of Appeal reversed and remanded, relying on *Conley*, *ibid.*, 45-46, stating the issue before them as whether it

appears beyond doubt that the plaintiffs can prove no set of facts in support of [their] claim which would entitle them

to relief."

Defendants cite *Wyatt v. Terhune* (9th Cir. 2003) 315 F.3d 1108 for the proposition that Plaintiff's complaint

must be dismissed for failure to exhaust administrative remedies.  They are in error.  The plaintiff in *Wyatt* was a

Rastafarian inmate who brought First and 14th Amendment claims against the wardens of the prison challenging the

male grooming regulations at the prison that would have required him to cut his hair contrary to his religious beliefs

and conceded that he had not followed the administrative remedies required under the Prison Litigation Reform Act

Pimentel v. Orloff, et al., Case No. C08-00249 MMC
Plaintiff's Response to Defendants' Motion to Dismiss
Page 5 of 14

(hereafter PLRA). The Court reversed and remanded, finding that failure to exhaust the administrative remedies under the PLRA was not jurisdictional in nature and therefore a defense to be raised and proved by the defendants. The Court likened the administrative requirements to statutes of limitation and stated, "Compliance with the applicable statutes of limitations is not a pleading requirement under Rule 8, and dismissal on such grounds generally is improper. *Id.,* 1117-1118.

The Defendants also rely on *Jablon v. Dean Witter & Co.,* (9th cir. 1990) (sic)614 F.2d 677, 682 to justify a dismissal where the "facts and dates alleged in the complaint indicate the claim is barred by the statute of limitations, a motion to dismiss for failure to state a claim lies." (Mot. To Dism . 7:8-10).

What Defendants fail to recognize is that the facts alleged in Plaintiff's complaint specifically state that this § 504 claim does not require exhaustion of administrative remedies nor a "right to sue letter." "Indeed, a statute of limitations defense does not justify dismissal of a claim 'unless it appears beyond doubt that the plaintiff can prove no set of facts that would establish the timeliness of the claim.'" *Hernandez v. City of El Monte*, 138 F.3d 393, 402 (9th Cir. 1998) (citation omitted).

Plaintiff's employment claims comply with FRCP 8 in that the complaint contains a short and plain statement of the claim that will give the defendants fair notice of what the plaintiff's claim is, the grounds upon which it rests, that plaintiff is entitled to relief and that there are no jurisdictional administrative exhaustion requirements. Rule 8(f) provides that all pleadings shall be so construed as to do substantial justice.

On these grounds, and based on the following, Defendants' 12(b)(6) motion should be denied.

**B. § 504 DOES NOT REQUIRE EXHAUSTION OF ADMINISTRATIVE REMEDIES NOR A "RIGHT TO SUE" LETTER**

Defendants take the position that Plaintiff's claims under [§ 504 of] the Rehabilitation Act are barred because she failed to exhaust administrative remedies (Mot. To Dism. 8:22-23.) Defendants then argue without any legal support whatsoever that § 504 incorporates Title VII's requirement that a complainant first file a charge with the Equal Employment Opportunities Commission ("EEOC") and receive a "Right to Sue" letter before a civil action may be filed. (Mot. To Dism. 8:3-6). (Emphasis original.) Defendants' reliance on *Gonzales v. Stanford Applied Engineering,*

Pimentel v. Orloff, et al., Case No. C08-00249 MMC
Plaintiff's Response to Defendants' Motion to Dismiss
Page 6 of 14

*Inc.* (9th Cir, 1979) 597 F.2d 1298, 1299, in support of their motion to dismiss for failure to exhaust administrative

remedies is misplaced.  *Gonzales* was in fact a Title VII case and therefore is inapposite here.

      Defendants cite *Woodman v. Runyon* (1997 10th Cir.), 132 F.3d 1330, 1341 as authority that exhaustion of

administrative remedies is a jurisdictional prerequisite to instituting a Title Vii action in federal court and that the

Rehabilitation Act encompasses this exhaustion requirement. *Woodman* is inapposite here.  As shown *infra.*, § 504

has no exhaustion requirement where the defendant is not the federal government, including the US Postal Service.

*Woodman* was an action brought against the United States Postal Service under Title VII and § 504.  The relevant

issue here was whether the plaintiff was required to comply with administrative remedies before bringing suit.  The

Court found that the plaintiff had complied with administrative requirements and cooperated with the EEOC, however,

the Rehabilitation Act had been amended during the course of proceedings in October 1992 to re-define the meaning

of "accommodation".  Because the Court found this crucial to plaintiff's claim, the matter was reversed and

remanded.

      § 504 of the Rehabilitation Act, 29 U.S.C. 794, prohibits "any *program or activity* receiving *federal financial*

*assistance*" from subjecting any "otherwise qualified individual with a disability" to discrimination. The term "program

or activity" is broadly defined. See 29 U.S.C. 794(b). § 504's prohibition encompasses, but is not limited to,

employment discrimination by such programs. See *Consolidated Rail Corp.* v. *Darrone*, 465 U.S. 624 (1984).  Each

agency awarding federal financial assistance has promulgated regulations to implement § 504. (citation omitted).

"[A]ny person aggrieved by any act or failure to act by any recipient of Federal assistance" can utilize the

"procedures" and "remedies" available under Title VI of the Civil Rights Act of 1964, 29 U.S.C. 794a(a)(2), **which**

**includes an implied private right of action against the program.**  See *Roberts* v. *Progressive Independence, Inc.*,

183 F.3d 1215, 1222 n.6 (10th Cir. 1999); *Pushkin* v. *Regents of the Univ. of Colo.*, 658 F.2d 1372, 1380 (10th Cir.

1981). (Emphasis added).  Title VI remedies. . .are available to plaintiffs who prevail in a § 504 action against "any

recipient of Federal assistance or Federal provider of such assistance under § 794 of this title." 29 U.S.C.

§794a(a)(2). Those same remedies are **not** available to plaintiffs who prevail in § 504 actions **against a federal**

**defendant**, including Executive agencies and the U.S. Postal Service. *See Morgan v. United States Postal Service*,

798 F.2d 1162 at 1165. (Emphasis added).  [see also **U.S. DOJ,** Civil Rights Division, Disability Rights §, *A Guide to*

Pimentel v. Orloff, et al., Case No. C08-00249 MMC
Plaintiff's Response to Defendants' Motion to Dismiss
Page 7 of 14

*Disability Rights* (Sept. 2005) "§ 504 may also be enforced through private lawsuits. It is not necessary to file a

complaint with a Federal agency or to receive a 'right-to-sue' letter before going to court."]

      C.  **42 USC §§ 1983 AND 1981a PROVIDE FOR INDIVIDUAL AND OFFICIAL LIABILITY ON THE PART OF EACH DEFENDANT AND PROVIDE ADDITIONAL REMEDIES TO PLAINTIFF FOR UNAUTHORIZED AND INTENTIONAL VIOLATIONS OF PLAINTIFF'S CONSTITUTIONAL  RIGHTS**

    i.  **42 USC § 1983**

    "Our analysis of the legislative history of the Civil Rights Act of 1871 compels the conclusion that Congress *did* intend municipalities and other local government units to be included among those persons to whom §1983 applies. Local governing bodies, therefore, can be sued directly under §1983 for monetary, declaratory, or injunctive relief  where the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers. Moreover, although the touchstone of the §1983 action against a government body is an allegation that official policy is responsible for a deprivation of rights protected by the Constitution, local governments, by the very terms of the statute, may be sued for constitutional deprivations visited pursuant to governmental custom even though such a custom has not received formal approval through the body's official decisionmaking channels." (*Monell v. New York City Dept. of Social Services* (1978) 436 US 658).

    Finally, it appears beyond doubt from the legislative history of the Civil Rights Act of 1871 that *Monroe [v. Pape (1961) 365 US 167]* misapprehended the meaning of the Act. Were 1983 unconstitutional as to local governments, it would have been equally unconstitutional as to state or local, officers yet the 1871 Congress clearly intended 1983 to apply to such officers and all agreed that such officers could constitutionally be subjected to liability under 1983. The Act also unquestionably was intended to provide a remedy, to be broadly construed, against all forms of official violation of federally protected rights. Therefore, without a clear statement in the legislative history, which is not present, there is no justification for excluding municipalities from the "persons" covered by 1983.  (Id., at 660).

    Defendants are inaccurate in their analysis that §1983 actions against individuals in their official capacities are not sustainable against the individual.  Where a defendant acts outside his authority or intentionally and with malice, personal liability may attach.

Pimentel v. Orloff, et al., Case No. C08-00249 MMC
Plaintiff's Response to Defendants' Motion to Dismiss
Page 8 of 14

Government officials may be sued in their *individual* capacity. Such a suit does not represent a suit against the government entity for which he is associated. *Kentucky v. Graham*, 473 U.S. 159, 165 (1985).

Personal capacity suits. . . seek to impose individual or personal liability upon a governmental officer for actions taken under color of state law. To establish personal liability in a § 1983 action, it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right. While the plaintiff in a personal capacity lawsuit need not establish a connection to governmental policy or custom, officials sued in their personal capacities, unlike those sued in their official capacities, may assert personal immunity defenses such as objectively reasonable reliance on existing law. State or local officers sued in their personal capacity come to court as individuals. A government official in the role of personal capacity defendant thus fits within the statutory term of person in § 1983.

Absolute immunity will not shield him if he "has intertwined his exercise of prosecutorial discretion with other, unauthorized conduct." *Bernard v. County of Suffolk*, 356 F.3d 495, 504. A prosecutor also does not have absolute immunity "for acts that are manifestly or palpably beyond his authority" or are "performed in the clear absence of all jurisdiction." *Schloss v. Bouse*, 876 F.2d 287, 291 (2d Cir. 1989). To determine whether a prosecutor has authority to take some act, "a court will begin by considering whether relevant statutes authorize prosecution for the charged conduct." *Bernard v. County of Suffolk*, 356 F.3d 495 (2d Cir. 2004) (holding that prosecutor engaging in an allegedly politically-motivated prosecution was nonetheless entitled to absolute immunity, since the decision to file charges was a prosecutorial function). "For example, where a prosecutor has linked his authorized discretion ... to an unauthorized demand for a bribe, sexual favors, or the defendant's performance of a religious act, absolute immunity will be denied." *Id.* at 504 (citing *Doe v. Phillips*, 81 F.3d 1204 (2d Cir. 1996). The most prominent (and perhaps one of the only published Second Circuit opinions applying the impermissibly intertwined doctrine) is *Doe v. Phillips*, 81 F.3d 1204 (2d Cir. 1996) In *Doe*, a state prosecutor, Gerald D'Amelia filed felony charges against a mother for allegedly molesting her 14-year old son. *Id.* at 1206. After beginning to doubt the boy's accusations, the prosecutor agreed to dismiss the charges. But only on one condition. Doe, a Roman Catholic, was required to swear on the Bible that the son's accusations were false. *Id.* At 1207 ("D'Amelia testified that he told counsel that [unless Doe swore on the Bible] criminal charges would not be dismissed against her [ ].") The panel held that even though accepting and demand a plea bargain is an advocative function, *Taylor v. Kavanagh*, 640 F.2d 450 (2d Cir. 1981), the prosecutor

Pimentel v. Orloff, et al., Case No. C08-00249 MMC
Plaintiff's Response to Defendants' Motion to Dismiss
Page 9 of 14

was not absolutely immune since he lacked authority to demand that Doe swear on the Bible. Because he lacked

authority to demand this "intertwined conduct," D'Amelia was not absolutely immune from suit. *Id.* at 1211.

("D'Amelia's conduct was not protected by absolute immunity because his demand that Doe swear to her innocence

on a bible in church was manifestly beyond his authority.")

Section 1983 does not impose a state of mind requirement independent of the underlying basis for

liability, *Parratt v. Taylor*, 451 U.S. 527 (1981), <u>overruled in part</u>, <u>Daniels v. Williams</u>, 474 U.S. 327 (1986)  but there

must be a causal connection between the defendant's actions and the harm that results. <u>Mt. Healthy City School Dist.

Bd. of</u> Educ. v. Doyle, 429 U.S. 274, 285-87 (1977). In order to hold a local government liable under section 1983, the

Supreme Court has interpreted this causation element to require that the harm be the result of action on the part of

the government entity that implemented or executed a policy statement, ordinance, regulation, or decision officially

adopted and promulgated by that body's officers, or the result of the entity's custom. Monell, supra., 690-691.

Further, the entity's policy or custom must have been the "moving force" behind the alleged deprivation. An

unconstitutional policy may also exist if an isolated action of a government employee is dictated by a "final

policymaker". Pembaur v. City of Cincinnati, 475 U.S. 469 (1986); Bryan County v. Brown, 520 U.S. 397 (1997).  Who

is a "final policymaker" is decided by reference to state law.  Pembaur, at 483; McMillan v. Monroe County, 520 U.S.

781 (1997).

However, a supervisor can only be liable in his individual capacity if he directly participates in causing the

harm--relying upon respondeat superior is insufficient. Greason v. Kemp, 891 F.2d 829, 836 (11th Cir. 1990); Brown

v. Crawford, 906 F.2d 667, 671 (11th Cir. 1990); Zatler v. Wainewright, 802 F.2d 397, 401 (11th Cir. 1986).

Section 1983 is not itself a source of substantive rights, it merely provides a method for the vindication of rights

elsewhere conferred in the United States Constitution and Laws. <u>Chapman v. Houston Welfare Rights Org.</u>, 441 U.S.

600, 617 (1979); <u>Baker v. McCollan</u>, 443 U.S. 137, 144 n.3 (1979). to state a claim for a deprivation of Due Process,

a plaintiff must show: (1) that he possessed a constitutionally protected property interest; and (2) that he was

deprived of that interest without due process of law. <u>Cleveland Board of Education v. Loudermill</u>, 470 U.S. 532

(1985); <u>Baker v. McCollan</u>, 443 U.S. 137, 145 (1979).  Due process property interests are created by "existing rules

or understandings that stem from an independent source such as state law--rules or understanding that secure

certain benefits and that support claims of entitlement to those benefits."  To have a property interest protected by the

Pimentel v. Orloff, et al., Case No. C08-00249 MMC
Plaintiff's Response to Defendants' Motion to Dismiss
Page 10 of 14

Due Process Clause, "a person must have more than an abstract need or desire for it.  He must have more than a

unilateral expectation of it.  He must, instead, have a legitimate claim of entitlement to it."  The determination of

whether due process was accorded is decided by reference to the Constitution. *Cleveland Bd. of Educ. v. Loudermill,*

470 U.S. 532, 541 (1985).  Due process requires that "a deprivation of life, liberty, or property be preceded by notice

and opportunity for hearing appropriate to the nature of the case," *Loudermill,* 470 U.S. at 542.

       In addition to protection against deprivations of procedural due process, the Due Process Clause has two

substantive components--the substantive due process simpliciter, and incorporated substantive due process.  In

order to state a claim for a violation of the substantive due process simpliciter, the plaintiff must demonstrate that the

defendant engaged in conduct that was "arbitrary, or conscience shocking, in a constitutional sense." *Collins v. City*

*of Harker Heights, Texas,* 503 U.S. 115, 128 (1992); *Rymer v. Douglas County*, 764 F.2d 796, 801 (11th Cir. 1985).

With respect to incorporated substantive due process, the plaintiff may state a claim by proving a violation of one of

the Bill of Rights.  The Supreme Court has held that one of the substantive elements of the Due Process Clause

protects those rights that are fundamental--rights that are implicit in the concept of ordered liberty, and has, over time,

held that virtually all of the Bill of Rights protect such fundamental rights and has likewise held that they apply to the

states through the "liberty" interest of the Due Process Clause. *Palko v. Connecticut,* 302 U.S. 319, 325 (1937).

      **ii.**    **42 USC §1981**

42 USC 1981a provides: **Damages in cases of intentional discrimination in employment**
     **(a)**  **Right of recovery**
      . . . .
      **(2) Disability**
      In an action brought by a complaining party under the powers, remedies, and
      procedures set forth in § 706 or 717 of the Civil Rights Act of 1964 42 U.S.C.
      2000e-5, 2000e-16 (as provided in § 107(a) of the Americans with Disabilities Act
      of 1990 (42U.S.C. 12117(a)), and § 794a(a)(1)of title 29, respectively) against a
      respondent who engaged in unlawful intentional discrimination (not an
      employment practice that is unlawful because of its disparate impact) under §
      791 of title 29 and the regulations implementing § 791 of title 29 or who violated
      the requirements of § 791 of title 29 or the regulations implementing § 791 of title
      29 concerning the provision of a reasonable accommodation, or § 102 of the
      Americans with Disabilities Act of 1990 (42 U.S.C. 12112), or committed a
      violation of § 102(b)(5) of the Act, against an individual, the complaining party
      may recover compensatory and punitive damages as allowed in sub§ (b) of this
      §, in addition to any relief authorized by § 706(g) of the Civil Rights Act of 1964,
      from the respondent.
      **(3) Reasonable accommodation and good faith effort**
      In cases where a discriminatory practice involves the provision of a reasonable
      accommodation pursuant to § 102(b)(5) of the Americans with Disabilities Act of

Pimentel v. Orloff, et al., Case No. C08-00249 MMC
Plaintiff's Response to Defendants' Motion to Dismiss
Page 11 of 14

1990 [42 U.S.C 12112(b)(5)) or regulations implementing § 791of title 29, damages may not be awarded under this § where the covered entity demonstrates good faith efforts, in consultation with the person with the disability who has informed the covered entity that accommodation is needed, to identify and make a reasonable accommodation that would provide such individual with an equally effective opportunity and would not cause an undue hardship on the operation of the business.

**(b) Compensatory and punitive damages**
**(1) Determination of punitive damages**
A complaining party may recover punitive damages under this § against a respondent (other than a government, government agency or political subdivision) if the complaining party demonstrates that the respondent engaged in a discriminatory practice or discriminatory practices with malice or with reckless indifference to the federally protected rights of an aggrieved individual.

In the instant case Defendants conducted themselves and caused others to act outside their advocative function, and even outside their individual authority, resulting in a deprivation of Plaintiff's constitutional rights. Sick leave and other policies were implemented that pertained only to the Plaintiff, the Plaintiff was stalked while at work by a co-worker at the behest of at least one of the defendants and DA Investigators and Deputy Sheriff's were dispatched to illegally enter and storm Plaintiff's home while she slept, all in violation of Plaintiff's 4th and 14th amendments of the US Constitution, 42 USC §§1981a and 1983 and § 504 of the Rehabilitation Act of 1973. The full nature and extent of these acts and the motivation behind them cannot be known until discovery procedures have been instituted and are fully under way. Therefore, the defendants and each of them are sued both in their official and individual capacities. Any immunity defense that exists is properly pled and proven as a defense and not as a basis for dismissal.

        **D.**  **DEFENDANTS' ARGUMENTS RELATIVE TO TITLE VII ARE INAPPLICABLE HEREIN BECAUSE PLAINTIFF'S CLAIMS DO NOT SOUND IN TITLE VII OF THE AMERICANS WITH DISABILITIES ACT**

Plaintiff has not cited nor claimed any cause of action under Title VII and therefore defendants' arguments in support of dismissal of substantive claims that rely on the Americans with Disabilities Act are inapposite.

/ / / / /

/ / / / /

/ / / / /

/ / / / /

/ / / / /

Pimentel v. Orloff, et al., Case No. C08-00249 MMC
Plaintiff's Response to Defendants' Motion to Dismiss
Page 12 of 14

**E.   THE "CATCHALL" FOUR-YEAR STATUTE OF LIMITATIONS
CONTAINED IN 28 U.S.C. §1658 GOVERNS PLAINTIFF'S CIVIL
ACTION AS IT AROSE UNDER FEDERAL STATUTES ENACTED
AFTER DECEMBER 1, 1990**

In 2004 the United States Supreme Court issued the long-awaited, seminal decision in *Jones v. R.R. Donnelley & Sons* 549 US 369 (2004) establishing that the four-year catchall statute of limitations contained in 28 USC §1658 governs all civil actions arising under federal statutes enacted after December 1, 1990, thereby negating the need to "borrow" state statutes of limitation and clear up the mass of confusion that resulted therefrom. The Court specified that a cause of action "aris[es] under an Act of Congress enacted" after December 1, 1990--and therefore is governed by §1658's 4-year statute of limitations--if the plaintiff's claim against the defendant was made possible by a post-1990 enactment.

The 1992 amendments to the Rehabilitation Act, incorporating Title VII standards as they relate to employment and providing for additional damages available for claims brought under the Rehabilitation Act and §1981a defines those claims as arising under an Act of Congress enacted after December 1, 1990. [see 29 USC 791(g) and 794(d)].

The Civil Rights Act of 1991 amended the Civil Rights Act of 1866 to include discrimination on the basis of disability, giving rise to Plaintiff's post-1990 claim under *Jones, supra.*

Therefore the applicable statute of limitations is that contained in 28 USC §1658 pursuant to the ruling in *Jones v. R.R. Donnelly, supra.*

**IV.  CONCLUSION**

An employment discrimination complaint need not include a *prima facie* showing and instead must contain only a short and plain statement of the claim showing that the pleader is entitled to relief.  When considering a motion to dismiss under Fed.R.Civ.P. 12(b)(6), the Court must view a plaintiff's allegations in the light most favorable to the plaintiff.  Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint.

Any person aggrieved by any act or failure to act by any recipient of Federal assistance can utilize the "procedures" and "remedies" available under Title VI of the Civil Rights Act of 1964, 29 U.S.C. 794a(a)(2), which includes an implied private right of action against the program.  Title VI remedies are available to plaintiffs who prevail

Pimentel v. Orloff, et al., Case No. C08-00249 MMC
Plaintiff's Response to Defendants' Motion to Dismiss
Page 13 of 14

in a § 504 action against any recipient of Federal assistance or Federal provider of such assistance under § 794 of this title.

The defendants are properly named individually and in their official capacity.  A government official in the role of personal capacity defendant fits within the statutory term of person in §1983.  Absolute immunity will not shield him if he "has intertwined his exercise of prosecutorial discretion with other, unauthorized conduct.

The four-year catchall statute of limitations contained in 28 USC §1658 governs all civil actions arising under federal statutes enacted after December 1, 1990.  A cause of action arises under an Act of Congress enacted after December 1, 1990--and therefore is governed by §1658's 4-year statute of limitations--if the plaintiff's claim against the defendant was made possible by a post-1990 enactment.  The 1992 amendments to the Rehabilitation Act, incorporating Title VII standards as they relate to employment and providing for additional damages available for claims brought under the Rehabilitation Act and §1981a defines those claims as arising under an Act of Congress enacted after December 1, 1990.

For the foregoing reasons, defendants' Motion to Dismiss should be denied.

Dated this 16th day of July, 2008

Deborah J. Pimentel, Plaintiff
In Propria Persona

Pimentel v. Orloff, et al., Case No. C08-00249 MMC
Plaintiff's Response to Defendants' Motion to Dismiss
Page 14 of 14